1  DAVID R. ONGARO, State Bar No. 154698
   dongaro@ongaropc.com
2  Scott S. Shepardson, State Bar No. 197446
   sshepardson@ongaropc.com
3  ONGARO PC
   1604 Union Street
4  San Francisco, CA 94123
   Telephone: (415) 433-3900
5  Facsimile: (415) 433-3950

6
   Attorney for Defendant
7  COWORX STAFFING SERVICES LLC

8

9              UNITED STATES DISTRICT COURT
10             SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| CLIFFORD LARSEN individually and on behalf of those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COWORX STAFFING SERVICES LLC, COWORX PERSONNEL, LLC; BULGARI CORPORATION OF AMERICA; CHANEL, INC; BLOOMINGDALE'S, LLC; BLOOMINGDALES.COM, LLC; BLOOMINGDALE'S THE OUTLET STORE, LLC; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. **'21CV1795 BAS AGS** <br><br> **DEFENDANT COWORX STAFFING SERVICES LLC'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. § 1332(D)(2) (CAFA)** <br><br> Complaint Filed: September 14, 2021 |

NOTICE OF REMOVAL

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF, AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant CoWorx Staffing Services LLC ("CoWorx") hereby removes the above-captioned action from the San Diego County Superior Court in the State of California to the United States District Court for the Southern District of California. This removal is based on 28 U.S.C. sections 1332(d), 1441, 1446, and 1453, and specifically, on the following grounds:

## STATEMENT OF JURISDICTION

1. This court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. section 1332(d). CAFA grants district courts original jurisdiction over civil class actions filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant and where the amount in controversy for the putative class members in the aggregate exceeds the sum or value of $5 million, exclusive of interesting costs. CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446. Here, as set forth below, this case meets all of CAFA's requirements for removal because the proposed class contains at least 100 members, there is diversity between at least one class member and one defendant, and the amount in controversy for all class members exceeds $5 million. *See* 28 U.S.C. section 1332(d).

## VENUE

2. The action was filed in San Diego Superior Court. Venue properly lies in the United states District Court for the Southern District of California pursuant to 28 U.S.C. sections 84(a) and 1441(a) and 1446.

## PLEADINGS, PROCESS AND ORDERS

3. On September 14, 2019, Plaintiff Clifford Larsen ("Plaintiff") filed a putative class action complaint in the Superior Court of California in the County of San Diego entitled *Clifford Larsen v. CoWorx Staffing Services, LLC; CoWorx Personnel, LLC; Bulgari Corporation of America; Chanel, Inc.; Bloomingdale's, LLC; Bloomingdales.com, LLC; Bloomingdale's the Outlet Store, LLC and Does 1 through 20, Inclusive*, San Diego County Superior Court Case No. 37-2021-00039021-CU-OE-CTL (the "Complaint"). The Complaint, including summons, is attached hereto as **Exhibits A**.

4. The Complaint brought claims for: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Permit Rest Breaks; (5) Failure to Reimburse Expenses; (6) Failure to Provide Accurate Itemized Wage Statements; (7) Failure to Pay All Wages Due Upon Separation of Employment; (8) Violation of Business & Professions Code §§ 17200 *et seq.* Exhibit A.

5. In the Complaint, Plaintiff seeks to represent himself and a class of employees defined as "[a]ll California citizens currently of formerly employed by Defendants as non-exempt employees in the State of California at any time between March 19, 2017 and the date of class certification," referred to herein as the "Class," and a subclass defined as "[a]ll members of the Class who separated their employment with Defendant at any time between march 19, 2018 and the date of class certification," referred to herein as "the Waiting Time Subclass." Exh. A, ¶¶ 20-21.[1]

---

[1] Plaintiff worked for the Luxury Method division of CoWorx. Throughout this litigation, the Parties have discussed employees employed in the Luxury Method division, and the information and data provided herein are for employees who worked for the Luxury Method division of CoWorx only. Fresnics Dec., ¶¶ 2, 5-10.

6. Plaintiff served Defendant with the original Complaint on November 25, 2020. A true and correct copy of the Proof of Service is attached hereto as **Exhibit B**.

7. Defendant filed an answer to the Complaint on October 19, 2021. A true and correct copy of the Answer to the Complaint is attached hereto as **Exhibit C**.

8. As of the date of removal, Defendant had not received formal service of proofs of service of the Complaint on the remaining defendants. Ongaro Dec., ¶ 2. However, the online docket for the case reflect that proof of service for the individual defendants had been filed. The proofs of service for the remaining defendants are attached hereto as **Exhibit D.**

9. CAFA permits any defendant to unilaterally remove the action if requirements of CAFA for removal are met, as they are here. *See*, 28 U.S.C. § 1453(b). Therefore, the remaining Defendants' consent to this removal is not necessary.

10. The pleadings filed in this matter which are not specifically outlined above, are attached hereto as **Exhibit E**.

11. To Defendant's knowledge, no further process, pleadings, or orders related to this Case have been filed in San Diego County Superior Court.

## TIMELINESS OF REMOVAL

12. An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the defendant, within thirty days of Plaintiff filing a pleading that provides grounds for removal. 28 U.S.C. § 1446(a)-(b).

13. As explained above, this Notice also contains all process, pleadings and orders that were served on Defendant, and the Answers served by Defendant. *See* Exhibits A-E.

## CAFA JURISDICTION PURSUANT TO 28 U.S.C. § 1332(D)

14. CAFA grants federal district courts original jurisdiction over civil class action lawsuits in which any plaintiff is a citizen of a state different from any defendant, and where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this Notice. Specifically, this Court has jurisdiction over this case under CAFA because it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) Defendant is not a state, state official or other governmental entity; (3) there is diversity between at least one class member and one defendant; and (4) the amount in controversy for all class members exceeds $5 million.

### A. The Putative Class Contains More than 100 Members.

15. The putative Class consists of "All California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California at any time, from March 19, 2017 to the date of class certification." Exhibit A, ¶ 20. Defendant estimates that there are more than 3,000 individuals who meet this putative class definition. Fresnics Dec., ¶ 7. Accordingly, the putative Class contains more than 100 members and satisfies the first requirement for CAFA jurisdiction.

### B. Defendant Is Not a Governmental Entity.

16. None of the named defendants – CoWorx Staffing Solutions LLC, CoWorx Personnel, LLC, Bulgari Corporation of America, Chanel, Inc., Bloomingdale's, LLC, Bloomingdales.com, LLC, Bloomingdale's the Outlet Store, LLC – are a governmental entity; Plaintiff alleges that they are all in the "staffing and retail industries." Exhibit A, ¶¶ 2, 11; Fresnics Dec., ¶ 4.

### C. Plaintiff's Citizenship is Diverse from Defendant's Citizenship.

17. CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different form any defendant." 28 U.S.C. § 1332(d)(2)(A). For purposes of removal, the citizenship of Doe defendants are disregarded and only named defendants are considered. 28 U.S.C. § 1441(a); *accord Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980).

18. Citizenship of a natural person is established by domicile. 28 U.S.C. § 1332(a)(1) (individual is a citizen of the state in which he or she is domiciled). A person's domicile is established by physical presence and an intent to remain indefinitely. *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986) (residence is *prima facie* evidence of domicile for purposes of determining citizenship). Moreover, "[o]nce an individual has established his state of citizenship, he remains a citizen of that state until he legally acquires a new stat of citizenship." *Altimore v. Mount Mercy College*, 420 F.3d 763, 769 (8th Cir. 2005).

19. Defendant is informed and believes and on that basis alleges that Plaintiff is, and was at the time the Complaint was filed, a citizen of the State of California. Plaintiff's last address on file with Defendant is in California. Fresnics Dec., ¶ 2. Defendant is unaware of any effort by Plaintiff to establish his citizenship outside the State of California, and last worked for Defendant in April, 2021, in California. *Id*. Plaintiff alleges in the Complaint that he is a resident of California. Exhibit A, ¶ 10. Accordingly, the weight of the evidence establishes that Plaintiff is a citizen of the State of California.

20. For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

21. The United States Supreme Court resolved that, for purposes of federal diversity jurisdiction, the nerve center test should be applied to determine a

corporations principle place of business. *Hertz Corp. v. Friend*, 130 S. Ct. 1180, 1192-93 (2010); *see also Co-Efficient Energy Systems v. CSL Industries, Inc.*, 812 F.2d 556, 558 (9th Cir. 1987) ("Under the 'nerve center test' . . . a corporation's principle place of business is where its executive and administrative functions are performed."). Under the "nerve center" test, a corporations principle place of business is where its high level officer is direct, control, and coordinate the corporations activities. *Id.*, at 1192.

22.  Defendant CoWorx was at the time of filing this action, and remains, a corporation incorporated under the laws of Delaware having its principal place of business at 412 Mt. Kimble Avenue Ste. 200C, Morristown New Jersey 07960. Fresnics Dec., ¶ 3. CoWorx's corporate headquarters are located in Morristown, New Jersey. *Id.* Executives, including the Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer, maintain their principal offices in New Jersey and make major corporate decisions from New Jersey. *Id.* Thus, Defendant CoWorx's principal place of business is in the State of New Jersey, and therefore Defendant is a citizen of the State of New Jersey for purposes of determining diversity of citizenship.

23.  Defendants Does 1 through 10 are fictitious. Pursuant to 28 U.S.C. § 1441(a), the citizenship of defendants sued under fictitious names must be disregarded for the purpose of determining diversity jurisdiction. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

24.  Because, as detailed above, Defendant CoWorx is a citizen of the State of Delaware and the State of New Jersey, and Plaintiff is a citizen of California, diversity of citizenship exists between at least one Defendant and one Plaintiff, and CAFA's diversity requirement is satisfied. 28 U.S.C. § 1332(d)(2)(A) (court has jurisdiction over class actions with more than $5 million in controversy where "any member of a class of plaintiffs is a citizen of a State different from any defendant").

### D. There Is Over $5 Million Based on the Relief Plaintiff Seeks.

25. The Class Action Fairness Act ("CAFA") authorizes the removal of class actions in which, among other factors mentioned above, the amount in controversy for all class members exceeds $5 million. The proper burden of proof imposed upon a defendant to establish the amount in controversy under CAFA is the preponderance of the evidence standard. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). "A defendant's burden of proof as to the amount in controversy for removal purposes is lenient." *Farley v. Dolgen California LLC*, 2017 WL 306096, *2 (E.D. Cal. Aug. 9, 2017).

26. Although Defendant expressly denies any liability for the damages alleged in the Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied, the Court must look to the allegations in the Complaint and presume that Plaintiff will prevail on his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.3d 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (amount in controversy analysis presumes that "plaintiff prevails on liability."). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Commun's, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

27. The Complaint is silent as to actual amount in controversy. Plaintiff's failure to specify the total amount of damages or other monetary relief in the complaint, however, does not deprive this Court of jurisdiction. *See White v. J.C. Penny Life Ins. Co.*, 861 F.Supp.25, 26 (S.D. W.Va. 1994) (defendant may remove suit to federal court notwithstanding the failure of plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any plaintiff could avoid removal simply by declining to place a specific dollar claim upon its claim."). Defendant need only establish by a preponderance of the evidence that the claims exceed the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373,

376 (9th Cir. 1997).

28. Defendant can establish the amount in controversy by relying upon the allegations in the complaint, and by setting forth facts in the notice of removal that demonstrate that the amount in controversy "more likely than not" exceeds the jurisdictional minimum. *Sanchez*, 102 F.3d at 404; *Rippee v. Boston Mkt. Corp.*, 408 F.Supp.2d 982, 984 (S.D. Cal. 2005) ("[T]he requirement under CAFA that the amount in controversy exceed $5,000,000 in the aggregate may be established either from the viewpoint of the plaintiff or the viewpoint of the defendant."). Further, in addition to the contents of the removal petition, the Court properly considers "summary judgment type evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations, in assessing the amount in controversy. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *Singer*, 116 F.3d at 377.

29. In calculating the amount in controversy, the Court must assume that the allegations in the Complaint are true and that a jury will return a verdict in favor of Plaintiff on all claims asserted in his complaint. *Kenneth Rothschild Trust*, 195 F.Supp.2d at 1001. The ultimate inquiry is the amount that is put in controversy by Plaintiff's complaint and not how much if anything defendant will actually owe. *Schere v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 399 (2d Cir. 2003) (ultimate or provable amount of damages is not what is considered in removal analysis; rather it is amount put in controversy by complaint).

30. Defendant denies the validity and merit of the entirety of Plaintiff's alleged claims, the legal theories upon which they are ostensibly based, and the alleged claims for monetary another relief that flow therefrom. For purposes of removal only, however, and without conceding that Plaintiff or the putative class are entitled to any damages or penalties whatsoever, it is readily apparent that the aggregated claims the putative class establishes, by a preponderance of the evidence, that the amount in controversy well exceeds the jurisdictional minimum of $5

9

NOTICE OF REMOVAL

million.

31. On behalf of himself and putative class members, Plaintiff seeks: (1) minimum wages under Labor Code §§ 223, 1194, 1194.2 and 1197 (Exhibit A, ¶¶ 37-43, Prayer for Relief); (2) overtime wages under Labor Code §§ 223, 510, 1194, and 1198 (Exhibit A, ¶¶ 44-55, Prayer for Relief); (3) premium pay for failure to comply with the meal and rest break requirements of the Labor Code (Exhibit A, ¶¶ 56-71, Prayer for Relief); (4) unreimbursed business expenses pursuant to Labor Code Section 2800 and 2802 (Exhibit A, ¶¶ 72-79, Prayer for Relief); (5) penalties for failure to provide compliant itemized wage statements pursuant to Labor Code Section 226 (Exhibit A, ¶¶ 80-85, Prayer for Relief); (6) "waiting time penalties" for alleged failure to pay wages prior to termination or resignation pursuant to Labor Code § 201-203 (Exhibit A, ¶¶ 86-91, Prayer for Relief) (7) restitution under California Business & Professions Code Section 17200 *et seq.* (Exhibit A, ¶¶ 92-101). As set forth below, the facial allegations in the Complaint and the total amount of wages, penalties, attorneys' fees and other monetary relief at issue in this action is in excess of this Court's jurisdictional minimum under CAFA.

32. With the class definition and subclasses, Defendant estimates that there are more than 3,076 putative class members and more than 111,583 workweeks based on the statute of limitations Plaintiff pled, or March 19, 2017[2] through present. Fresnics Dec., ¶ 7. The putative class earned an average of $22.23 per hour and worked on average 3 times per week. *Id*.

   **1. $292,905.38 for Failure to Pay Minimum Wages.**

33. Plaintiff's first cause of action alleges a violation of California Labor

---

[2] Plaintiff claims he is entitled to six months additional statutory period based on a COVID-related emergency rule of court. Exhibit A, fn. 1. Defendant disputes this allegation and believes Plaintiff has the standard four-year statute of limitation for wage claims brought in conjunction with a claim for unfair business practices. However, for purposes of removal only, Defendant uses Plaintiff's alleged statutory period to calculate the amount in controversy.

Code sections 223, 1194, 1194.2, 1197 and 1198 for unpaid minimum wages. Plaintiff alleges that he and similar putative Class Members are owed minimum wage for hours that were worked but not paid, "including, but not limited to, hours spent working off the clock, among others." Exhibit A, ¶ 40. Plaintiff also alleges that he and putative Class members were "required to drive their personal vehicles, but were not paid for their travel time." *Id.*, ¶ 38. For his cause of action for Failure to Pay Minimum Wages, Plaintiff prays for unpaid wages as well as interest, costs and attorneys' fees. *Id.*, ¶ 42.

34.  Plaintiff incorporates his claim for Failure to Pay Minimum Wages into his claim that Defendant engaged in "unlawful, fraudulent, and unfair business practices." *Id.*, ¶¶ 92-101. The statute of limitations on this claim when combined with an Unfair Competition Law ("UCL") claim is four years. *See Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-79 (2000). Plaintiff claims his statute of limitations actually extends an additional six months, to March 19, 2017. Exhibit A, fn. 1 and ¶ 20. During this time period, there were more than 3,076 putative class members who worked more than 111,583 workweeks. Fresnics Dec., ¶ 7. The lowest minimum wage in California from March 19, 2017 to date was $10.50 per hour in 2017, which increased to $11 per hour in 2018, $12 per hour in 2019, $13 per hour in 2020 and is currently $14 per hour. *See* https://www.dir.ca.gov/dlse/ faq_minimumwage.htm.

35.  Defendant denies the validity and merit of the claim for Failure to Pay Minimum Wage. However, even assuming that putative class members worked just fifteen minutes each week for which they were not paid at least minimum wage during the statutory period, the amount in controversy for this claim for purposes of removal only, based upon a review of the available data and the individualized calculations which have been run, the amount in controversy for this claim is **$292,905.38** [(.25 hours x 111,583 workweeks) x ($10.50 lowest-possible minimum

wage[3]) = $292,905.38]

## 2. **$930,183.78 for Failure to Pay Overtime Wages.**

36.     Plaintiff's second cause of action brought on a class basis alleges a violation of California Labor Code sections 223, 510, 1194 and 1198 for unpaid overtime.  Plaintiff alleges that he and similar putative Class Members were "required" to work in excess of eight (8) hours in a day, forty (40) hours in a week, and/or on a seventh consecutive day of work" but "were not paid proper overtime wages." Exhibit A, ¶¶ 51-52.  For his cause of action for Unpaid Overtime, Plaintiff prays for unpaid overtime wages and attorneys' fees. *Id.*, ¶ 55.

37.     Plaintiff incorporates his claim for unpaid overtime into his claim that Defendant engaged in "unlawful, fraudulent, and unfair business practices." *Id.*, ¶ 92-101. The statute of limitations on this claim when combined with an Unfair Competition Law ("UCL") claim is four years.  *See Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-79 (2000).  Plaintiff claims his statute of limitations actually extends an additional six months, to March 19, 2017.  Exhibit A, fn. 1 and ¶ 20.  During this time period, there were more than 3,076 putative class members who worked more than 111,583 workweeks.  Fresnics Dec., ¶ 7.

38.     Defendant denies the validity and merit of the claim for Unpaid Overtime.  However, even assuming that putative class members worked just fifteen minutes of overtime each week during the statutory period, the amount in controversy for this claim for purposes of removal only, based upon a review of the available data and the individualized calculations which have been run, the amount in controversy for this claim is **$930,183.78** [(.25 hours x 111,583 workweeks) x

---

[3] Defendant's data does not currently break out total workweeks by year. Accordingly, Defendant used the lowest-possible minimum wage during the statutory period. This is an under-estimation, since that minimum wage was only in effect for three months, between September 5, 2015 and January 1, 2016. Nonetheless, Defendant uses this lower number to demonstrate how readily the $5 million minimum amount in controversy is met.

12

NOTICE OF REMOVAL

($22.23 average hourly rate x 1.5) = $930,183.78]

### 3. **$2,480,490.09 for Meal Break Claims.**

39.  Plaintiff's third class claim is for Failure to Provide Meal Periods, brought pursuant to of Labor Code §§ 226.7 and 512 and the applicable IWC Wage Order.  Plaintiff alleges that "Plaintiff and Class Members did not receive complaint meal periods for working more than five (5) and ten (10) hours per day because their meal periods were missed, late, short, interrupted, and/or they were not permitted to take a second meal period." Exhibit A, ¶ 61.  Plaintiff seeks penalties pursuant to Labor Code § 226.7, which allows for a premium payment equivalent to one hour of pay for every day in which the employer fails to comply with the meal and rest period requirements of the Labor Code.  Cal. Lab. Code § 226.7(c).

40.  Plaintiff incorporates his meal break claim into his claim that Defendant engaged in "unlawful, fraudulent, and unfair business practices." *Id.*, ¶ 92-101. The statute of limitations on this claim when combined with an Unfair Competition Law ("UCL") claim is four years.  *See Cortez*, 23 Cal.4th at 178-79.  Plaintiff claims his statute of limitations actually extends an additional six months, to March 19, 2017.  Exhibit A, fn. 1 and ¶ 20.  During this time period, there were more than 3,076 putative class members who worked more than 111,583 workweeks and earned approximately $22.23 per hour.  Fresnics Dec., ¶ 7.

41.  Defendant denies the validity and merit of the meal period claim.  However, even assuming that members of the Class incurred a single meal period violation for the statutory period meal break claim, the amount in controversy for the meal break claim is **$2,480,490.09** (111,583 workweeks x $22.23 meal period premium x 1 occurrence per week = $2,480,490.09).

### 4. **$2,480,490.09 for Rest Break Claims.**

42.  Plaintiff's fourth class claim is for Failure to Permit Rest Periods, brought pursuant to of Labor Code §§ 226.7 and the applicable IWC Wage Order.  Plaintiff alleges that "Plaintiff and Class Members did not receive ten (10) minute

1 rest period for every four (4) hours or major fraction thereof worked, including working in excess of ten (10 hours per day because they were required to work through their rest periods and/or were not authorized to take their rest periods." Exhibit A, ¶ 68. Plaintiff seeks penalties pursuant to Labor Code § 226.7, which allows for a premium payment equivalent to one hour of pay for every day in which the employer fails to comply with the meal and rest period requirements of the Labor Code. Cal. Lab. Code § 226.7(c).

43. Plaintiff incorporates his rest break claim into his claim that Defendant engaged in "unlawful, fraudulent, and unfair business practices." *Id.*, ¶ 92-101. The statute of limitations on this claim when combined with an Unfair Competition Law ("UCL") claim is four years. *See Cortez*, 23 Cal.4th at 178-79. Plaintiff claims his statute of limitations actually extends an additional six months, to March 19, 2017. Exhibit A, fn. 1 and ¶ 20. During this time period, there were more than 3,076 putative class members who worked more than 111,583 workweeks and earned approximately $22.23 per hour. Fresnics Dec., ¶ 7.

44. Defendant denies the validity and merit of the rest period claim. However, even assuming that Class members incurred a single meal period violation for the statutory period meal break claim, the amount in controversy for the meal break claim is **$2,480,490.09** (111,583 workweeks x $22.23 meal period premium x 1 occurrence per week = $2,480,490.09).

### 5. **$557,915 for Failure to Reimburse Expenses.**

45. Plaintiff's fifth class claim is for Failure to Reimburse Business Expenses in violation of Labor Code sections 2800 and 2802. Plaintiff alleges that he and Class members were not reimbursed for "cell phone and personal car use required for work." Exhibit A, ¶ 77.

46. Plaintiff incorporates his claim for Failure to Reimburse Business Expenses into his claim that Defendant engaged in "unlawful, fraudulent, and unfair business practices." *Id.*, ¶ 92-101. The statute of limitations on this claim when

combined with an Unfair Competition Law ("UCL") claim is four years. *See Cortez*, 23 Cal.4th at 178-79. Plaintiff claims his statute of limitations actually extends an additional six months, to March 19, 2017. Exhibit A, fn. 1 and ¶ 20. During this time period, there were more than 3,076 putative class members who worked more than 111,583 workweeks. Fresnics Dec., ¶ 7.

47.   Defendant denies the validity and merit of the expense reimbursement claims. However, even assuming that members of the Class incurred a mere five dollars in unreimbursed business expenses per workweek, the amount in controversy for the wage statement claim is **$557,915** (111,583 workweeks x $5 = $557,915).

### 6. **$5,536,800 for Failure to Provide Proper Wage Statements.**

48.   Plaintiff's sixth class claim is for Failure to Provide Accurate Itemized Wage Statements in violation of Labor Code sections 226 and the applicable Wage Order. Plaintiff alleges that Defendant knowingly and intentionally failed to furnish Plaintiff and Wage Statement Class members with pay stubs that complied with Labor Code section 226 by failing to "correctly state the gross and net wages earned, total hours worked, all applicable hourly rates in effect, and the number of hours worked at each hourly rate by Plaintiff and Class Members." Exhibit A, ¶ 82. Plaintiff seeks a penalty pursuant to Labor Code section 226(e), which provides for the greater of all actual damages or fifty dollars for the initial pay period in which a violation occurred, and one hundred dollars per employee for each violation in subsequent pay periods, plus attorneys' fees and costs, for himself and members of the Class. *Id.*, ¶ 84.

49.   Plaintiff's wage statement claim is brought on behalf of the Class during the "relevant period." Exhibit A, ¶ 82. Plaintiff does not seek to use a different statute of limitations for this claim, which Defendant argues would be proper, and therefore apparently intends to pursue this claim on behalf of the same Class of 3,076 putative class members who worked more than 111,583 workweeks

during the putative class period.[4]  Fresnics Dec., ¶ 7.  Putative Class members were paid weekly, so each workweek represents a pay period.  Fresnics Dec., ¶ 8. The 111,583 workweeks across 3,076 employees means each employee worked an average of 36 pay periods.

50.  Defendant denies the validity and merit of the putative class members' wage statement penalty claims.  However, for purposes of removal only, Defendant can determine the amount in controversy by applying the penalty that is authorized by statute.  Accordingly, the amount in controversy for the wage statement claim is **$5,536,800** (36 pay periods x 3,076 individuals x $50[5]).

### 7. $6,019,732.80 for Waiting Time Penalties

51.  Plaintiff's seventh class claim is for Failure to Pay All Wages Due Upon Separation of Employment, in violation of Labor Code §§ 201, 202 and 203.

52.  Plaintiff alleges that "Defendants willfully failed to pay the Waiting Time Subclass all their earned wages upon termination, including, but not limited to, proper minimum wage and overtime compensation, meal period premiums, and rest period premiums either at the time of discharge or within seventy-two (72) hours of their leaving Defendants'' employ.  Exhibit A, ¶ 88.   Plaintiff seeks a penalty pursuant to Labor Code section 203 of continuing wages for no more than 30 days or until paid.  *Id.*, ¶ 115.

---

[4] Because of the complexity of pulling data and time limits of removal, Defendant was not able to pull data for the one-year statute of limitations that should apply to Plaintiff's wage statement claim pursuant to California Code of Civil Procedure section 340, which provides a one-year statute of limitations for civil penalties, which Defendant argues should apply.  However, even if the total potential liability on this claim were one quarter of the calculation laid out herein, there is still well over $5 million in controversy.

[5] Defendant uses the "first violation" for all wage statements because, at an average of 30 wage statements per Wage Statement Class member, the maximum of $4,000 per person is not met.  Additionally, this is the lowest-possible penalty per wage statement, which demonstrates that there is easily at least $5 million in controversy, since Plaintiff may argue that he and other putative class members are entitled to $100 penalties for "subsequent violations" after the initial noncompliant wage statement, pursuant to Labor Code section 226(e).

53.  Plaintiff's waiting time claim is brought only on behalf of employees whose employment was terminated from March 19, 2018 forward.  Defendant estimates that there are more than 1,500 individuals who worked for Defendant in California between March 19, 2018 and present, who have separated their employment. Fresnics Dec., ¶ 9.  They earned, on average, $22.06 per hour and worked an average of six hours per day.  *Id.*

54.  Defendant denies the validity and merit of the putative class members' waiting time penalty claims.  However, for purposes of removal only, Defendant determines the amount in controversy by applying the maximum penalty authorized.  Accordingly, the amount in controversy for this claim is **$5,956,200.00** (30 days x 6 hours per day x $22.06/hour x 1,500 separated employees = $5,956,200).

### 8.  Total Amount in Controversy

55.  Based upon the foregoing, the total potential recovery for the Class on their claims for unpaid overtime, unpaid minimum wage, waiting time penalties, noncompliant wage statements, unreimbursed business expenses, and meal and rest break is at least $18,234,984.30, as summarized below:

| | |
|---|---|
| Unpaid Minimum Wages | $292,905.38 |
| Unpaid Overtime | $930,183.78 |
| Meal Break Penalties | $2,480,490.09 |
| Rest Break Penalties | $2,480,490.09 |
| Expense Reimbursement | $557,915.00 |
| Wage Statement Penalties | $5,536,800 |
| Waiting Time Penalties | $5,956,200 |
| **Total Amount in Controversy** | **$18,234,984.30** |

56.  Accordingly, although Defendant denies Plaintiff's claims of

wrongdoing, based on the foregoing, under the Class Action Fairness Act, Plaintiff's claims for damages, penalties, attorneys' fees, and other monetary relief far exceed the $5 million jurisdictional minimum for removal to this court, as required by 28 U.S.C. § 1332(d).

**NOTICE TO PLAINTIFF AND THE STATE COURT**

57. Contemporaneously with the filing of this Notice in this Court, written notice of such filing will be provided to Plaintiff's counsel of record, Samuel A. Wong, Kashif Haque and Jessica Campbell of Aegis Law Firm, PC, 9811 Irvine Center Drive, Ste. 100, Irvine California 92618.

58. A copy of the Notice of Removal will also be filed with the Clerk of the Superior Court of the County of San Diego, California.

**CONCLUSION**

59. **WHEREFORE,** having provided notice as required by law, Defendant removes this action now pending against them in the Superior Court of the State of California, County of San Francisco, to this Honorable Court, and request that this Court retain jurisdiction for all further proceedings.

**Dated: October 20, 2021**                ONGARO PC

By: __/s/ Scott S. Shepardson__
Scott S. Shepardson
David R. Ongaro
Attorneys for Defendant
CoWorx Staffing Solutions LLC